**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 28 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-30000 |
| Plaintiff-Appellee, | D.C. No. 1:21-cr-02012-MKD-1 |
| v. |  |
| ANTONIO FLORES-BUSTOS, | MEMORANDUM[*] |
| Defendant-Appellant. |  |

Appeal from the United States District Court
for the Eastern District of Washington
Mary K. Dimke, Magistrate Judge, Presiding

Argued and Submitted September 12, 2024
Seattle, Washington

Before: CHRISTEN and SUNG, Circuit Judges, and RAKOFF,[**] District Judge.
Dissent by Judge SUNG.

Antonio Flores-Bustos, a native of Mexico, appeals the district court's order

denying his motion to dismiss his indictment for illegal reentry, 8 U.S.C. § 1326,

on the ground that his underlying order of removal was invalid because he received

ineffective assistance of counsel in his removal proceedings. Because the parties

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

are familiar with the facts, we do not recount them here. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the district court's order denying the motion to dismiss the indictment, *United States v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015), and we affirm.

To collaterally challenge an underlying order of removal in a prosecution for illegal reentry, a defendant must establish: (1) he or she "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) the proceedings giving rise to the order "improperly deprived the [defendant] of the opportunity for judicial review"; and (3) "the entry of the order was fundamentally unfair." § 1326(d). These three statutory requirements are mandatory and may not be excused. *United States v. Palomar-Santiago*, 593 U.S. 321, 326-27 (2021). Here, Flores-Bustos failed to establish that he exhausted his available administrative remedies.[1] *See* § 1326(d)(1).

Flores-Bustos contends that he received ineffective assistance of counsel in his removal proceedings and that he therefore satisfies § 1326(d)(1). Flores-Bustos principally relies on our prior decision in *United States v. Lopez-Chavez*, 757 F.3d 1033 (9th Cir. 2014), where we held that ineffective assistance of counsel may "satisf[y] all three [§ 1326(d)] requirements necessary to sustain a collateral

---

[1] Because we conclude that Flores-Bustos did not satisfy § 1326(d)(1), we need not address the remaining requirements of § 1326(d).

2

challenge" to a removal order. *Id.* at 1044.

The Government asserts that this portion of *Lopez-Chavez* does not survive *Palomar-Santiago* because it impermissibly excuses a failure to exhaust. *See Palomar-Santiago*, 593 U.S. at 326 ("When Congress uses 'mandatory language' in an administrative exhaustion provision, 'a court may not excuse a failure to exhaust.'" (citation omitted)). Flores-Bustos insists that *Lopez-Chavez* remains good law because it merely describes a way in which § 1326(d)(1) may be *satisfied*, rather than a way in which that requirement may be *excused*.

We agree with the Government. *Lopez-Chavez* itself confirms that it excused a defendant's non-compliance with § 1326(d)(1). There, rather than explaining how the defendant actually exhausted available administrative remedies, we reasoned that "counsel's ineffectiveness . . . *caused Lopez-Chavez's failure to exhaust* administrative remedies." *Lopez-Chavez*, 757 F.3d at 1044 (emphasis added). Thus, we recognized that the defendant had failed to pursue available administrative remedies and absolved him of that failure.

Notably, we already rejected an argument like Flores-Bustos's in *United States v. Portillo-Gonzalez*, 80 F.4th 910 (9th Cir. 2023). There, we concluded that Ninth Circuit authority holding that a defendant may "satisf[y]" or "meet" the first two requirements of § 1326(d) by establishing that an Immigration Judge's (IJ) error effectively deprived the defendant of a meaningful opportunity to seek

administrative remedies and appeal "did not survive the Supreme Court's decision in *Palomar-Santiago*." *Id.* at 918. We reasoned that the IJ's substantive error did not render further review "unavailable" because "further administrative review, and then judicial review if necessary, could fix that very error." *Id.* (quoting *Palomar-Santiago*, 593 U.S. at 328). Here, like in *Portillo-Gonzalez*, administrative review "could fix [the] very error" that Flores-Bustos contends the IJ made. *Id.* (citation omitted).

To the extent *Lopez-Chavez* would excuse Flores-Bustos's failure to exhaust, it is clearly irreconcilable with *Palomar-Santiago*. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) (holding that "where the reasoning . . . of our prior circuit authority is clearly irreconcilable with the reasoning . . . of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled"); *see also Portillo-Gonzalez*, 80 F.4th at 919 ("And to the extent that our prior precedent has endorsed such an argument, it is clearly irreconcilable with *Palomar-Santiago* and has been abrogated by the Supreme Court's decision in that case."). Accordingly, Flores-Bustos's ineffective assistance of counsel, by itself, does not establish compliance with § 1326(d)(1).

Flores-Bustos also relies on the Supreme Court's decision in *Ross v. Blake*, 578 U.S. 632 (2016), to argue that because his counsel was ineffective,

4

administrative remedies were not "available" to him within the meaning of § 1326(d)(1). *See United States v. Valdivias-Soto*, 112 F.4th 713, 730 (9th Cir. 2024) (concluding that *Ross*'s standard applies to § 1326(d)(1)). Specifically, Flores-Bustos contends he was the victim of "misrepresentation" within the meaning of *Ross* because his ineffective counsel misled him about the availability of an appeal on the issue of whether his crime of conviction was a crime involving moral turpitude. *See Ross*, 578 U.S. at 644. But even assuming an attorney's erroneous advice could qualify as a misrepresentation of the sort *Ross* contemplates, the error made by Flores-Bustos's counsel did not concern "procedural steps for pursuing administrative remedies." *Portillo-Gonzalez*, 80 F.4th at 920 (emphasis omitted). "[T]here was a substantive mistake as to the availability of relief," but "that is not enough to render an administrative appeal 'unavailable.'" *Id.*[2]

> **AFFIRMED.**

---

[2] The dissent identifies a possible path for this petitioner, but it is not one that his briefing articulates. *See Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1140 (9th Cir. 2022). Because the complexities and nuances of this argument have not been tested by the adversarial process, we decline to reach it.

*United States v. Flores-Bustos*, No. 23-30000

SUNG, Circuit Judge, dissenting:

Antonio Flores-Bustos seeks to dismiss his indictment for illegal reentry under 8 U.S.C. § 1326 by collaterally attacking his underlying removal order on the ground that he received ineffective assistance of counsel during his removal proceeding in violation of due process. Section 1326(d) authorizes such collateral attacks—but only if the defendant satisfies three requirements. Because I conclude that Flores-Bustos has satisfied all three, I would reverse the district court's denial of Flores-Bustos's motion to dismiss his indictment, and I respectfully dissent.

The majority concludes that Flores-Bustos did not satisfy the administrative exhaustion requirement of § 1326(d)(1). In arguing that he satisfied § 1326(d)(1), Flores-Bustos principally relies on *Lopez-Chavez*, where we held that a defendant who received ineffective assistance of counsel in their removal proceeding was excused from satisfying the procedural requirements set forth in § 1326(d)(1) and (d)(2). *United States v. Lopez-Chavez*, 757 F.3d 1033, 1044 (9th Cir. 2014). I agree with the majority that Flores-Bustos' reliance on that holding in *Lopez-Chavez* is misplaced because it was abrogated by *Palomar-Santiago*, which held that courts cannot make "extrastatutory" exceptions to excuse § 1326(d)'s requirements. *United States v. Palomar-Santiago*, 593 U.S. 321, 327 (2021); *see also United States v. Portillo-Gonzalez*, 80 F.4th 910, 917 (9th Cir. 2023), *cert. denied*, 144 S.

1

Ct. 1128 (2024).

The remainder of the majority's analysis, however, overextends the holdings of *Palomar-Santiago* and *Portillo-Gonzalez* while failing to adequately account for the holdings of *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), *Ross v. Blake*, 578 U.S. 632 (2016), and *United States v. Valdivias-Soto*, 112 F.4th 713 (9th Cir. 2024). As I explain further below, neither *Palomar-Santiago* nor *Portillo-Gonzalez* compels the majority's conclusion that Flores-Bustos failed to satisfy § 1326(d)(1)'s administrative exhaustion requirement because those cases addressed collateral challenges based on substantive immigration law errors, not procedural due process defects like ineffective assistance of counsel. Moreover, to determine whether Flores-Bustos satisfied § 1326(d)(1)'s administrative exhaustion requirement, we must consider the scope of its "built-in" statutory exception for administrative remedies that are "officially on the books" but "in practice" unavailable for use to obtain relief from an immigration judge's substantive error. *Ross*, 578 U.S. at 635, 643; *Valdivias-Soto*, 112 F.4th at 731. And, when determining the scope of that exception, we must consider the "'real-world workings of' the immigration court system," *Valdivias-Soto*, 112 F.4th at 731, as well as the constitutional due process principles set forth in *Mendoza-Lopez*.

Below, I begin by summarizing the constitutional and statutory

2

interpretation principles established in *Mendoza-Lopez*, *Palomar-Santiago*, *Ross*, *Portillo-Gonzalez*, and *Valdivias-Soto*. Then, I turn to applying those principles to the facts of this case.

## I.     Legal Background

### A. *Mendoza-Lopez*

8 U.S.C. § 1326 makes it a crime to reenter the United States after having been previously "removed."[1] Thus, a prior removal order is an element of the criminal offense of illegal reentry.

Subsection 1326(d) authorizes a defendant to collaterally challenge an underlying removal order under certain circumstances. 8 U.S.C. § 1326(d). Subsection 1326(d) begins by setting out the general rule that "an alien may not challenge the validity of the deportation order" in a § 1326 prosecution. *Id.* It then provides an exception if the defendant demonstrates that:

> "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair." *Id.*

---

[1]     Under 8 U.S.C. § 1326(a), "any alien who—
(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States . . .
shall be fined under title 18, or imprisoned not more than 2 years, or both."

3

If the defendant satisfies all three § 1326(d) requirements, "the challenged removal order may not be used to establish any element of an illegal reentry offense." *Valdivias-Soto*, 112 F.4th at 722.

Congress enacted the exception provided for in § 1326(d) in response to the Supreme Court's decision in *Mendoza-Lopez*, 481 U.S. 828. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 441, 110 Stat. 1214, 1279. The defendants in *Mendoza-Lopez* moved to dismiss their indictments under § 1326 by collaterally attacking the underlying deportation orders "on the ground that they were denied fundamentally fair deportation hearings." 481 U.S. at 831. The issue before the Supreme Court was "whether a federal court must *always* accept as conclusive the fact of the deportation order, even if the deportation proceeding was not conducted in conformity with due process." *Id.* at 834. Considering the prior version of § 1326, the Court first asked whether § 1326 itself provided for a collateral challenge to the underlying deportation order and concluded that it did not. *Id.* at 834–37. However, the fact "[t]hat Congress did not intend the validity of the deportation order to be contestable in a § 1326 prosecution [did] not end [the Court's] inquiry." *Id.* at 837. Rather, the Court proceeded to consider whether constitutional due process requires that a defendant have some opportunity for judicial review of their removal order before that order

4

"may be used to establish conclusively an element of a criminal offense." *Id.* at 838.

As the Court explained, "Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id.* at 837–38 (collecting cases). Moreover, "[t]his principle means at the very least that where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." *Id.* at 838. Thus, for an illegal reentry prosecution to comport with due process, "*at a minimum,*" "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense *must* be permitted where the deportation proceeding *effectively* eliminates the right of the alien to obtain judicial review." *Id.* at 839 (emphases added). And, when a procedural error "functionally deprive[d]" the noncitizen of judicial review of their deportation order, the government may not rely on the deportation order "as reliable proof of an element of a criminal offense." *Id.* at 839 n.17, 840.

**B. The Supreme Court's decisions in *Palomar-Santiago* and *Ross*, and our decisions in *Portillo-Gonzalez* and *Valdivias-Soto***

5

After § 1326(d) was enacted, we interpreted and applied its requirements in numerous cases. The bases for the collateral attacks in these cases can be divided into two categories. In the first category, the defendants collaterally attacked deportation orders based on procedural due process defects. *See, e.g.*, *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (immigration judge "failed to inform [noncitizen] that he had the right to appeal his removal order to the BIA"); *United States v. Arias-Ordonez*, 597 F.3d 972, 974 (9th Cir. 2010) (government's order "misinformed [noncitizen] that he had no administrative remedies"); *Lopez-Chavez*, 757 F.3d at 1044 (noncitizen "received ineffective assistance of counsel in his immigration proceedings in violation of due process"). In the second category, the defendants collaterally attacked their deportation orders based solely on an immigration judge ("IJ")'s substantive errors regarding immigration law, such as errors regarding the noncitizen's removability or their eligibility for relief from removal. *See, e.g.*, *United States v. Ochoa*, 861 F.3d 1010, 1013 (9th Cir. 2017), *abrogated by Palomar-Santiago*, 593 U.S. 321 (noncitizen's conviction "was not a categorical match" to a removable offense); *United States v. Pallares-Galan*, 359 F.3d 1088, 1104 (9th Cir. 2004) ("IJ erroneously informed [noncitizen] that he was not eligible for relief from deportation"); *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) ("IJ never informed [noncitizen] of his eligibility for a § 212(h) waiver").

6

In most of these cases, the defendant had not appealed their removal orders to the Board of Immigration Appeals ("BIA") during deportation proceedings. Eventually, even in cases where the defendant did not appeal to the BIA, we held that the defendant was "excused from proving the first two requirements" of § 1326(d), including (d)(1)'s administrative exhaustion requirement, if the IJ erred in finding removability where the noncitizen "was not convicted of an offense that made him removable . . . to begin with[.]" *Ochoa*, 861 F.3d at 1015. That is, in a case where the defendant collaterally attacked their deportation order based solely on an IJ's substantive error on the merits, we held that the defendant was excused from satisfying § 1326(d)(1) and (d)(2). *See id.*

In 2021, the Supreme Court granted certiorari to review that holding. *Palomar-Santiago*, 593 U.S. at 326 (explaining that the Court granted cert to review "Ninth Circuit precedent providing that defendants are 'excused from proving the first two requirements' of § 1326(d) if they were 'not convicted of an offense that made [them] removable'" (quoting *Ochoa*, 861 F.3d at 1015)). The Court concluded that this holding was "incompatible with the text of § 1326(d)" because the statute requires defendants to "meet all three" of its requirements. *Id.* The Court explained that the "first two procedural requirements are not satisfied just because a noncitizen was removed for an offense that did not in fact render him removable." *Id.* at 327. "[T]he substantive validity of the removal order is

7

quite distinct from whether the noncitizen exhausted his administrative remedies (by appealing the immigration judge's decision to the BIA) or was deprived of the opportunity for judicial review (by filing a petition for review of a BIA decision with a Federal Court of Appeals)." *Id.*

The Supreme Court expressly noted that its decision in *Palomar-Santiago* was "narrow." *Id.* at 328 n.4. The Court did not address whether either the Due Process Clause or other "freestanding constitutional" concerns would preclude application of § 1326(d)'s otherwise-mandatory requirements in certain circumstances. *Id.* Further, the *Palomar-Santiago* Court never considered whether the defendant before it had, in fact, satisfied § 1326(d)(1) and (d)(2), because "the narrow question [the] Court granted certiorari to decide" asked only whether he was "excused from" doing so. *Id.* at 329, 328 n.4; *see also United States v. Palacios-Arias*, No. 21-4020, 2022 WL 1172167, at *2 (4th Cir. Apr. 20, 2022) (recognizing the narrow scope of the *Palomar-Santiago* decision).

Our cases following *Palomar-Santiago* clarify the relatively narrow scope of its impact on our § 1326 precedents. We first applied *Palomar-Santiago* in *Portillo-Gonzalez*, 80 F.4th 910. Defendant Portillo-Gonzalez sought dismissal of his § 1326 indictment on the ground that the IJ had "misapprehended the standards for eligibility of voluntary departure" in advising him that he was ineligible for that relief. 80 F.4th at 918. Although Portillo-Gonzalez never filed a BIA appeal, he

8

argued that he "effectively satisfied" § 1326(d)(1) and (d)(2) because "an alien who is not made aware of 'his or her apparent eligibility' for relief has had no '*meaningful opportunity* to appeal' the removal and seek such relief." *Id.* at 917 (quoting *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 (9th Cir. 2013)). We held that *Palomar-Santiago* "forecloses" this argument, because an IJ's "substantive error of immigration law 'does not excuse the noncitizen's failure to comply with a mandatory exhaustion requirement if further administrative review, and then judicial review if necessary, could fix that very error.'" *Id.* at 918 (quoting *Palomar-Santiago*, 593 U.S. at 328). We also rejected Portillo-Gonzalez's attempt to characterize the IJ's error in his case as a "procedural one, not a substantive one." *Id.* at 919 (cleaned up). We explained that "*Palomar-Santiago* did not limit its holding to an IJ's substantive errors," and in any event, "[w]hether Portillo-Gonzalez was eligible for voluntary departure [was] a substantive issue." *Id.*

We then applied *Palomar-Santiago* in *Valdivias-Soto*, 112 F.4th 713. In that case, defendant Valdivias argued his removal order was invalid based on two grounds. First, the IJ had stated that Valdivias was "substantively ineligible" for any forms of discretionary relief from removal, notwithstanding his apparent eligibility for a U-visa. *Valdivias-Soto*, 112 F.4th at 727. We determined the IJ's statement regarding Valdivias's eligibility for discretionary relief was a "substantive error" of immigration law. *Id.* at 728. Second, Valdivias was

9

"repeatedly told"—through an interpreter's mistranslation of the IJ's statements—that he would have to "hire" an attorney to be represented on appeal, notwithstanding his right to seek *pro bono* counsel, and the related right to be informed of the availability of *pro bono* legal services, in removal proceedings.[2] *Id.* at 729, 722–23. We determined that this mistranslation was a procedural defect that violated Valdivias's due process right to counsel. *Id.* at 723. Ultimately, we held that Valdivias "satisfie[d] each of § 1326(d)'s three requirements" based on the second ground (the procedural defect) but not the first (the IJ's substantive error on the merits). *Id.* at 733, 721–33. Because the reasoning and holdings of *Valdivias-Soto* are significant here, I discuss them in greater detail.

We started by determining whether Valdivias satisfied § 1326(d)(3)'s fundamental unfairness requirement. Addressing the IJ's error regarding Valdivias's eligibility for relief, we explained that *Palomar-Santiago* and *Portillo-Gonzalez* made clear that this "substantive error" on the merits neither invalidated

---

[2]     Several regulations "implement" a noncitizen's right to counsel in removal proceedings. *Valdivias-Soto*, 112 F.4th at 722. For example, although a noncitizen in removal proceedings is not constitutionally entitled to counsel paid for by the government, immigration judges are required to inform the noncitizen about the availability of free representation and verify that the agency has provided the noncitizen with a list of *pro bono* legal service providers. *See id.* at 722–23 (citing 8 C.F.R. §§ 1240.10(a)(2), 1003.61(b)). If an IJ gives "inadequate" or "erroneous advice" that violates these regulations, and the noncitizen is "nevertheless allowed to proceed *pro se*, his removal hearing violate[s] due process." *Id.* at 724–25.

10

his appellate waiver nor violated his due process rights in the underlying deportation proceeding. *See id.* 725–28. However, we held that the translation errors regarding Valdivias's right to counsel on appeal to the BIA invalidated both his waiver of the right to counsel and his waiver of the right to appeal, and because the IJ accepted those waivers, his removal hearing violated due process. *Id.* at 722–25, 728–29. Because the government conceded that invalid waivers of the right to counsel and the right to appeal would have prejudiced Valdivias, we concluded that Valdivias's removal proceeding was fundamentally unfair. *See id.* at 722; *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014) ("fundamental unfairness" under § 1326(d)(3) requires proof of a due process violation and resulting prejudice). Thus, Valdivias satisfied § 1326(d)(3). *See Valdivias-Soto*, 112 F.4th at 722.

Next, we considered whether Valdivias satisfied § 1326(d)(1)'s administrative exhaustion requirement. We reviewed the state of the law following *Ross*, *Palomar-Santiago*, and *Portillo-Gonzalez*, and made several significant holdings. *Id.* at 730–31. We began by discussing *Ross*, where the Supreme Court interpreted the Prison Litigation Reform Act ("PLRA")'s administrative exhaustion provision. *Id.* at 730 (citing *Ross*, 578 U.S. 632). In *Ross*, much like in *Palomar-Santiago*, the Supreme Court held that the Fourth Circuit had erred by creating an "extra-textual" exception to a statutory exhaustion requirement to

11

"excuse a failure to exhaust." *Ross*, 578 U.S. at 638–39. However, the Court's analysis did not end there, and the Court held that the statute included a "built-in" textual exception because it requires exhaustion of only "available" remedies. *Id.* at 635, 642. The Court then held that an administrative remedy is "available" only if it is "capable of use to obtain some relief for the action complained of." *Id.* at 642 (cleaned up). Further, the Court explained that, in certain circumstances, administrative remedies are, "practically speaking, incapable of use." *Id.* at 643–44. In *Valdivias-Soto*, we recognized that § 1326(d)(1)—which is textually similar to the PLRA's exhaustion provision— also contains a built-in availability exception, and we held that the practical standard for availability "delineated by *Ross* in the PLRA context also applies to § 1326(d)(1)'s exhaustion requirement." *Valdivias-Soto*, 112 F.4th at 730.

Then, we carefully considered *Palomar-Santiago* and *Portillo-Gonzalez* and "delineate[d] several contours of § 1326(d)(1)'s exhaustion requirement." *Id.* at 731–32. "First, the exhaustion requirement—like all § 1326(d)'s requirements— must be satisfied in every case. But defendants need only have exhausted administrative remedies that were 'available' to them." *Id.* at 731 (quoting 8 U.S.C. § 1326(d)(1) and citing *Ross*, 578 U.S. at 642). Second, we held that to identify circumstances "when a remedy is 'incapable of use' and thus 'unavailable,' it is necessary to look to 'the real-world workings of' the

12

immigration court system." *Id.* (cleaned up). Third, we clarified that, "at a minimum, such circumstances include those identified in *Ross*, including when immigration officials 'thwart respondents from taking advantage of a remedy through . . . misrepresentation.'" *Id.* (cleaned up).

We recognized in *Valdivias-Soto* that an IJ's "'substantive error of immigration law' does not excuse a defendant from administratively appealing 'if further administrative review, and then judicial review if necessary,' exists to 'fix that very' type of error." *Id.* (quoting *Portillo-Gonzalez*, 80 F.4th at 918). But we also recognized that there continues to be a meaningful difference between a "substantive error of immigration law" and misstatements regarding "the rules or procedural steps governing [] appeals." *Id.* at 731–32 (quotation marks and citation omitted). In so holding, we rejected the government's argument that *Portillo-Gonzalez* "reject[ed] the distinction between substantive and procedural errors." *Id.* at 732 n.14. We explained that "*Portillo-Gonzalez* . . . simply confirms that a challenge to an IJ's procedural error is 'governed by the limitations of § 1326(d)' no less than a challenge based on an IJ's substantive error—that is, regardless of the type of error alleged, the noncitizen must satisfy the exhaustion requirement." *Id.* (quoting *Portillo-Gonzalez*, 80 F.4th at 919). But a misstatement about "appeal rights or procedures" could make an appeal unavailable, even though a "substantive mistake" does not. *Id.*

13

After delineating those legal standards, we applied them and concluded that Valdivias "satisfie[d] § 1326(d)(1) notwithstanding his failure to appeal his removal order to the BIA because he 'need not exhaust' unavailable remedies." *Id.* at 732 (quoting *Ross*, 578 U.S. at 642). Because "the right to counsel in removal proceedings is a "*procedural* protection," "the IJ's erroneous advice about Valdivias's right to counsel was . . . not an 'error on the merits,' but a misstatement of the type described in *Ross* concerning the *procedural rules* for obtaining administrative remedies." *Id.* (cleaned up). "Accordingly, . . . the erroneous translations at Valdivias's removal hearing rendered administrative review of his removal order unavailable." *Id.*

Finally, we considered § 1326(d)(2)'s deprivation of judicial review requirement. *Id.* at 733. We held that Valdivias satisfied that requirement because "[n]oncitizens who are unable to appeal their removal order because they entered a waiver of their right to appeal that was not considered and intelligent have been improperly deprived of judicial review." *Id.* (citing *Mendoza-Lopez*, 481 U.S. at 840). Significantly, we expressly held that "a single due process violation" can satisfy all three requirements of § 1326(d). *Id.* n.16.

With these principles in mind, I turn to considering whether Flores-Bustos has satisfied all three § 1326(d) requirements in this case.

## II.    Analysis

In this case, Flores-Bustos contends he received ineffective assistance of counsel that caused his removal proceeding to violate due process. Most significantly, Flores-Bustos contends that counsel's performance was grossly deficient because counsel failed to recognize that the IJ's determination that Flores-Bustos was convicted of a crime that rendered him removable was substantively erroneous and failed to challenge that erroneous determination on appeal to the BIA.

As discussed above, the IJ's substantive error regarding removability, standing alone, would not satisfy all of § 1326(d)'s requirements. *See Portillo-Gonzalez*, 80 F.4th at 918. However, because ineffective assistance of counsel is a "procedural" defect that is distinct from the IJ's substantive error, *Valdivias-Soto*, 112 F.4th at 732, this case is materially distinguishable from *Portillo-Gonzalez*.

In *Valdivias-Soto*, we held that a mistranslation regarding the right to counsel on appeal was a procedural due process defect that satisfied all three of § 1326(d)'s requirements. *Id.* at 733. The question presented here is whether ineffective assistance of counsel had the same effect as the mistranslation in *Valdivias-Soto*. Applying the standards discussed and established in that case, I conclude that it did.

Below, I analyze whether Flores-Bustos satisfied § 1326(d)'s requirements by starting with (d)(3)'s fundamental unfairness requirement, as we did in

15

*Valdivias-Soto*. I explain that Flores-Bustos has satisfied the fundamental unfairness requirement by establishing that he received ineffective assistance of counsel in violation of due process. Then, I explain that this procedural due process defect made BIA review of the IJ's removability determination unavailable to Flores-Bustos and that he exhausted the administrative remedies that were "available" to him, as required by § 1326(d)(1). Finally, I explain that the constitutional due process violation improperly deprived Flores-Bustos of the opportunity for judicial review under § 1326(d)(2).

### A. Flores-Bustos demonstrated that the removal proceeding was fundamentally unfair under § 1326(d)(3).

#### 1. Legal Standards for § 1326(d)(3)

Section 1326(d)(3) requires the defendant to demonstrate that "the entry of the [removal] order was fundamentally unfair." 8 U.S.C. § 1326(d)(3). "An underlying order is 'fundamentally unfair' if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Valdivias-Soto*, 112 F.4th at 722 (quoting *Alvarado-Pineda*, 774 F.3d at 1201).

The right to counsel in removal proceedings is "rooted in the Due Process Clause" of the Fifth Amendment and "codified at 8 U.S.C. § 1362 and § 1229a(b)(4)(A)." *Id.* (cleaned up); *see also Tawadrus v. Ashcroft*, 364 F.3d 1099,

16

1103 (9th Cir. 2004) ("Congress has recognized [the right to counsel in a removal hearing] among the rights stemming from the Fifth Amendment guarantee of due process[.]"). The right to counsel is a "crucial procedural protection" for noncitizens in removal proceedings. *Valdivias-Soto*, 112 F.4th at 722 (quoting *Usubakunov v. Garland*, 16 F.4th 1299, 1303 (9th Cir. 2021)). When a noncitizen retains counsel, he is "entitled to have that counsel perform with sufficient competence." *Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004); *see also Iturribarria v. INS*, 321 F.3d 889, 901 (9th Cir. 2003) (noting that by retaining counsel, noncitizen was entitled to "reasonably rel[y] on and assume[] his counsel's competence). Consequently, ineffective assistance of counsel in a removal proceeding violates a noncitizen's constitutional right to due process. *See Dearinger ex rel. Volkova v. Reno* ("*Volkova*"), 232 F.3d 1042, 1045 (9th Cir. 2000).

To establish ineffective assistance of counsel in violation of due process, a noncitizen must prove that counsel's assistance was "so ineffective as to have impinged upon the fundamental fairness" of the removal proceeding. *Id.* (quoting *Magallanes-Damian v. INS*, 783 F.2d 931, 933 (9th Cir. 1986)). To meet this standard, the noncitizen must make "two showings": (1) "that counsel failed to perform with sufficient competence," and (2) "that they were prejudiced by their counsel's performance." *Maravilla Maravilla v. Ashcroft*, 381 F.3d 855, 858 (9th

17

Cir. 2004) (cleaned up). To show prejudice, the noncitizen must show that "the outcome of the proceeding may have been affected" by counsel's error. *Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020) (quotation marks and citation omitted). He need not conclusively prove that the outcome would have been different but "only needs to show . . . *plausible* grounds for relief." *Lin*, 377 F.3d at 1027 (quoting *United States v. Jimenez–Marmolejo*, 104 F.3d 1083, 1086 (9th Cir. 1996)).

Because an ineffective assistance of counsel claim requires proof of prejudice, a defendant who establishes a due process violation based on ineffective assistance of counsel necessarily makes the showings required to satisfy § 1326(d)(3)'s fundamental unfairness requirement. *Compare id., with United States v. Ramos*, 623 F.3d 672, 684 (9th Cir. 2010) (prejudice under § 1326(d)(3) requires showing "plausible grounds for relief"). For the reasons discussed below, Flores-Bustos has shown that he received ineffective assistance of counsel in violation of due process, which satisfies § 1326(d)(3)'s requirement.

## 2. <u>Factual Background for Ineffective Assistance of Counsel</u>

The pertinent facts are not disputed. Flores-Bustos came to the United States when he was six years old and became a Legal Permanent Resident in June 2005. In May 2008, he pleaded guilty to third-degree theft and second-degree vehicle prowling under Washington law. In July 2009, the government served Flores-

18

Bustos with a Notice to Appear ("NTA"), charging him as removable. Because

Flores-Bustos was a Legal Permanent Resident, he was presumptively not

removable, and the government bore the burden of proving removability "by clear

and convincing evidence." 8 C.F.R. § 1240.8(a). The government alleged only one

ground of removability: specifically, the government alleged that Flores-Bustos's

theft conviction qualified as a crime involving moral turpitude ("CIMT") under 8

U.S.C. § 1227(a)(2)(A)(i).[3]

Flores-Bustos retained attorney Paul Edmondson to represent him in

removal proceedings. The hearing transcripts show that Edmondson failed to

review Flores-Bustos's NTA before the first hearing before an IJ. At that hearing,

Edmonson told the IJ he was "not sure what the specifics [were]" on Flores-

Bustos's criminal conviction. The IJ asked Edmondson to "please be prepared in

these proceedings" and rescheduled the hearing to a later date. Despite that

admonishment, Edmondson failed to challenge removability at the second

hearing—that is, Edmonson failed to contest the government's allegation that

---

[3]     Under 8 U.S.C. § 1227(a)(2)(A)(i), a noncitizen who
"(I) is convicted of a crime involving moral turpitude committed within five years
. . . after the date of admission, and
(II) is convicted of a crime for which a sentence of one year or longer may be
imposed,
is deportable." Flores-Bustos does not contest that he was sentenced to a term of
one year.

Flores-Bustos's conviction qualified as a CIMT. When the IJ asked whether Edmondson conceded his client's removability, he only gave a vague, confusing response: "Well, we would like to stay and keep our green card. I don't know if it's automatic or not, but we'd like to apply for a pardon, if possible." At that hearing, and every subsequent hearing before the IJ, Edmondson never made any argument about the CIMT issue—the sole ground of removability for his client.[4]

In February 2010, the IJ issued a written decision. The IJ first analyzed whether Flores-Bustos's theft conviction qualified as a CIMT that rendered him removable. The IJ acknowledged that under the Washington theft statute, "the requirement of intent to permanently deprive is not an element" of the crime. Because a CIMT necessarily requires an element of intent to permanently deprive, the IJ "[did] not find that the [Washington theft] offense [was] categorically a crime involving moral turpitude because it [was] overbroad." The IJ, however,

---

[4]  For the purpose of this analysis, I focus on Edmondson's errors regarding Flores-Bustos's removability. However, I note that Edmondson made numerous additional errors during his representation that support the conclusion that Flores-Bustos received ineffective assistance of counsel. For example, for Flores-Bustos's application for cancellation of removal, Edmondson improperly filed a brief that was rejected by the immigration court. On the day of the merits hearing, he "filed" pre-hearing statements by merely placing a physical copy on the court's bench, making them ten days late. He also appeared baffled when the IJ brought up legal authorities cited in the government's briefing and could not respond in his client's favor.

concluded that it should apply the modified categorical approach. Then, the IJ reviewed Flores-Bustos's plea document and engaged in factfinding: based on a statement in the plea document indicating that Flores-Bustos took items from a car on the side of a freeway, the IJ "assumed" that he did so with the intent to permanently deprive. Consequently, the IJ concluded that Flores-Bustos's conviction qualified as a CIMT and that he was "removable as charged." The IJ also denied Flores-Bustos's applications for cancellation of removal and voluntary departure.

After the IJ issued the adverse decision, Edmondson filed a notice of appeal with the BIA. However, it is unclear whether Edmondson filed any brief before the BIA. The record does not contain a BIA brief, and the BIA's decision refers only to "Respondent's Notice of Appeal" when addressing Flores-Bustos's arguments. In any event, the BIA noted that Flores-Bustos "[did] not contest the Immigration Judge's finding that [he] was removable as charged." This means that Edmondson did not challenge the IJ's removability determination before the BIA—even though that determination was a key issue—and, as explained below—there were multiple, viable arguments that it was substantively incorrect. The BIA then affirmed denial of cancellation of removal and voluntary departure and dismissed the appeal. No petition for review was filed with the appropriate court of appeals, which would have been the Ninth Circuit.

### 3.  <u>Application of the Ineffective Assistance of Counsel Standard</u>

Considering these undisputed facts, I conclude that Edmondson "failed to perform with sufficient competence" and Flores-Bustos was "prejudiced by [his] counsel's performance." *Maravilla*, 381 F.3d at 858 (cleaned up). Therefore, Flores-Bustos has established that he received ineffective assistance of counsel in violation of his constitutional due process rights.

#### a.  *Failure to Perform with Sufficient Competence*

A noncitizen satisfies the first prong of an ineffective assistance claim by showing that "competent counsel would have acted otherwise." *Id.* By requiring immigration counsel to perform with sufficient competence, "[w]e do not require that [the] representation be brilliant, but it cannot serve to make [a noncitizen's] immigration hearing 'so fundamentally unfair that [he] was prevented from reasonably presenting his case.'" *Lin*, 377 F.3d at 1027 (quoting *Lopez v. INS*, 775 F.2d 1015, 1017 (9th Cir. 1985)).

Here, Edmondson's poor representation prevented Flores-Bustos "from reasonably presenting his case." *Id.* As noted above, because Flores-Bustos was a Legal Permanent Resident, he was presumptively not removable. The government alleged only one ground of removability—it contended that Flores-Bustos's theft conviction qualified as a CIMT. Under controlling law, there were viable and strong arguments that the IJ's analysis was erroneous.

22

By February 2010, when the IJ found Flores-Bustos removable, three principles that restrict application of the modified categorical approach had been clearly established. First, adjudicators may not apply the modified categorical approach when "the crime of conviction [i]s missing an element of the generic crime altogether." *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1073 (9th Cir. 2007) (en banc).

Second, adjudicators may not apply the modified categorical approach when a statute that is broader than the generic crime lists "only one singular crime" and is not "divisible into several crimes." *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1159–60 (9th Cir. 2008). Moreover, we held that a crime is not "divisible"— and therefore, the modified categorical approach may not be applied—when the crime is "not missing an entire element of the generic offense" but instead has an overbroad element that "defines only one singular crime." *Id.*; *see also Nijhawan v. Holder*, 557 U.S. 29, 35 (2009) (noting that courts may look to the record of conviction when statute refers to "several different crimes, each described separately"); *United States v. Boaz*, 558 F.3d 800, 808 (8th Cir. 2009) ("When a statute is broadly inclusive, but contains no alternatives in its elements, we must apply the traditional categorical approach, and application of the modified categorical approach is inappropriate."); *United States v. Giggey*, 551 F.3d 27, 40 (1st Cir. 2008) ("Under the categorical approach, a federal sentencing court may

23

not create a series of federal subcategorizations to fit the facts of a particular case. . . . If the state statute does not contain such a distinction, the federal court may not create one[.]").

Third, even when adjudicators apply the modified categorical approach, "inquiry into the underlying facts of the conviction is . . . prohibited." *United States v. Bonat*, 106 F.3d 1472, 1475 (9th Cir. 1997); *see also Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004) (holding that we may not "look beyond the record of conviction itself to the particular facts underlying the conviction") (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)); *Wala v. Mukasey*, 511 F.3d 10, 110 (2d Cir. 2007) (holding that agency "transgressed the permitted scope of the modified categorical approach" by "looking to the facts of [the] conviction to infer" that defendant committed crime with the requisite intent of a CIMT). That is, even under the modified categorical approach, the criminal conviction cannot be considered a match unless the record of conviction "'unequivocally' establish[es]" that the defendant was actually convicted of the generic offense. *Kepilino v. Gonzales*, 454 F.3d 1057, 1062 (9th Cir. 2006) (quoting *United States v. Smith*, 390 F.3d 661, 664 (9th Cir. 2004)); *see also Shepard v. United States*, 544 U.S. 13, 21 (2005) (requiring record of conviction to meet "*Taylor*'s demand for certainty"); *id.* at 24 (plurality opinion) (noting that under this "demanding requirement," a conviction can only be considered a categorical match if it

24

"'necessarily' involved (and a prior plea necessarily admitted) facts equating to" the generic crime).

Only three years after the IJ issued the decision in Flores-Bustos's case, the Supreme Court confirmed that these three principles were correct at the time his case was decided (and continue to be correct). *Descamps v. United States*, 570 U.S. 254 (2013). *Descamps* confirmed that the modified categorical approach may be applied only when a statute is divisible. *Id.* at 257. Moreover, the Court confirmed that a statute is divisible only when it lists "alternative elements," *not* when a statute is either missing an element (as we held in *Navarro-Lopez*) or when it has an overbroad element (as we held in *Estrada-Espinoza*). *Id.* at 264; *see also id.* at 260 (holding that the modified categorical approach may not be applied when state law defines a crime "not alternatively, but only more broadly than the generic offense"). As the Court explained, "Whether the statute of conviction has an overbroad or missing element, the problem is the same: Because of the mismatch in elements, a person convicted under that statute is never convicted of the generic crime." *Id.* at 276.

Further, *Descamps* reaffirmed that, "whatever [the defendant] says, or fails to say, about superfluous facts," adjudicators cannot engage in "judicial factfinding" to find a match based on "a non-elemental fact." *Id.* at 269–70. Put differently, the modified categorical approach was only "a tool for implementing"

25

the strict categorical approach, and it authorized an adjudicator to consult the record of conviction only to determine "which of a statute's alternative elements formed the basis of the defendant's prior conviction"—not to determine "what the defendant and state judge must have understood as the factual basis" of the conviction. *Id.* at 262–63 (discussing *Taylor* and *Shepard*).

Although the Court decided *Descamps* after the IJ issued Flores-Bustos's removal order, the Court emphasized that these three limits on the modified categorical approach were clearly established in Supreme Court precedents that predated Flores-Bustos' case. *See, e.g.*, *id.* at 263 (explaining that the Court had "only . . . ever allowed" the modified approach to be used when the state statute listed elements alternatively and only to determine which version of the crime the defendant was convicted of—not to engage in factfinding); *id.* at 263–64 ("[W]hen a statute lists multiple, alternative elements, and so effectively creates 'several different . . . crimes,'" "[and] at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of. That is the job, *as we have always understood it*, of the modified approach: to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense." (quoting *Nijhawan*, 557 U.S. at 41) (emphasis added)).

Based on this state of the law, Flores-Bustos had several "viable legal argument[s]" to challenge the IJ's removability determination. *Lin*, 377 F.3d at 1025. As the IJ acknowledged in its decision, for a theft offense to be a CIMT, it must include the element of an "intent to permanently deprive" the owner of the property. *See Castillo-Cruz v. Holder*, 581 F.3d 1154, 1159 (9th Cir. 2009); *see also Matter of Diaz-Lizarraga*, 26 I&N Dec. 847, 849 (BIA 2016) ("From the Board's earliest days we have held that a theft offense categorically involves moral turpitude if—and only if—it is committed with the intent to *permanently* deprive an owner of property."). In Flores-Bustos's case, the theft statute underlying his conviction includes an intent to deprive, but does not require the intent to deprive *permanently*.[5]

---

[5]    The Washington third-degree theft statute provides, "A person is guilty of theft in the third degree if he or she commits theft of property or services which (a) does not exceed seven hundred fifty dollars in value, or (b) includes ten or more merchandise pallets, or ten or more beverage crates, or a combination of ten or more merchandise pallets and beverage crates." RCW 9A.56.050(1).

A definition statute in turn defines "theft" to mean:
"(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or
(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or
(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him or her of such property or services."

Flores-Bustos could have argued that the statute was "missing an element of the generic crime altogether," and thus, under *Navarro-Lopez*, the IJ should not have applied the modified categorical approach. *Navarro-Lopez*, 503 F.3d at 1073. Alternatively, Flores-Bustos could have argued that the modified categorical approach did not apply because the statute was overbroad and not "divisible into several crimes." *Estrada-Espinoza*, 546 F.3d at 1159–60.[6]

Third, even assuming the IJ was permitted to apply the modified categorical approach, Flores-Bustos could have argued that the IJ erred by engaging in factfinding to find a match. Here, the IJ considered a factual statement in the Statement of Defendant on Plea of Guilty, in which Flores-Bustos stated that he

---

RCW 9A.56.020(1). In *State v. Komok*, a decision cited by the IJ, the Washington Supreme Court held that the Washington's theft statute, by "merely stat[ing] 'intent to deprive,'" did not require "intent to permanently deprive." 783 P.2d 1061 (Wash. 1989).

[6]  At this time, we did not always carefully consider whether a statute was divisible (that is, listing elements in the alternative), as opposed to overbroad, before applying the modified categorical approach. *See, e.g.*, *Castillo-Cruz*, 581 F.3d at 1159; *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1020 (9th Cir. 2005), *abrogated by Holder v. Martinez Gutierrez*, 566 U.S. 583 (2012). But these cases did not engage in a reasoned analysis of divisibility or whether the modified categorical approach should apply. Nor did they address or distinguish *Estrada-Espinoza*, 546 F.3d at 1159–60. Thus, they would not have foreclosed the argument that the theft statute underlying Flores-Bustos's conviction was indivisible and the modified categorical approach was inapplicable. And, as explained above, in *Descamps*, the Supreme Court confirmed that these cases erred in applying the modified categorical approach to overbroad statutes and that *Estrada-Espinoza* was correctly decided.

28

took items from a car along a freeway. Flores-Bustos did not make any statement regarding his intent, much less a statement admitting that he intended to deprive the owner of the items permanently. Yet, the IJ engaged in factfinding and "assumed" that "the theft was done with the intention of retaining the items permanently."

The IJ's factfinding contravened controlling precedents in two ways. First, as discussed above, the modified categorical approach did not authorize the IJ to use the record of conviction to determine "'the factual basis of the prior plea'" in order to find a match, but only to "determine which of a statute's alternative elements formed the basis" of the conviction. *Descamps*, 570 U.S. at 262–63 (quoting *Shepard*, 544 U.S. at 25–26 (plurality opinion)). That is, the IJ was required to "focus on the elements, rather than the facts," of Flores-Bustos's conviction. *Id.* at 263. Second, controlling precedent required adjudicators to limit their inquiry to what the defendant "actually admitted in a plea." *United States v. Franklin*, 235 F.3d 1165, 1172 (9th Cir. 2000). That is, even if factual statements could be considered, the IJ could not draw *inferences* from factual statements to find the required intent to make Flores-Bustos's conviction a CIMT.

Indeed, before the IJ issued the decision in Flores-Bustos's case, the Second Circuit had held that such factfinding was improper in a highly analogous case, *Wala v. Mukasey*, 511 F.3d 102. *Wala*, authored by then-Judge Sotomayor,

29

involved a Connecticut larceny statute requiring an "intent to deprive," but did not "distinguish between permanent or temporary takings." 511 F.3d at 107. There was no dispute that the statute was divisible and that the modified categorical approach applied. *Id.* at 109. The BIA consulted Wala's plea colloquy, in which he "admitted to taking two rings, official jewelry, a first union credit card, and two watches from the victim's home." *Id.* at 105–06, 109 (cleaned up). Based on these facts, the BIA inferred that Wala's offense "involved a permanent taking of property" and concluded his conviction qualified as a CIMT. *Id.* at 105.

The Second Circuit held that the BIA's application of the modified categorical approach was erroneous. *Id.* at 110. The court found that, based on what Wala "actually admitted" to in the plea colloquy, he "did not admit . . . to taking these items with the intent to appropriate them permanently." *Id.* at 109. As a result, "[b]ecause Wala did not admit to, was not charged with, and was not required to plead to a permanent taking in order to be convicted in Connecticut of burglary in the third degree, Wala's guilty plea does not necessarily rest on facts identifying the burglary as a CIMT." *Id.* at 109–10. In rejecting the BIA's factual inference, the court explained, "although it may have been reasonable for the BIA to infer that Wala intended permanently to keep the items he admitted taking, the modified categorical approach does not permit the BIA to draw inferences of this kind." *Id.* at 109. "[B]y looking to the facts of Wala's conviction to infer" the

30

intent to permanently deprive, the BIA "transgressed the permitted scope of the modified categorical approach." *Id.* at 110.

Even though *Wala* was a Second Circuit case, considering its similarity to Flores-Bustos's case, as well as the principles set forth in the controlling Ninth Circuit and Supreme Court precedents, the argument that the IJ erred by engaging in factfinding to determine that Flores-Bustos had committed a CIMT would have been viable in the Ninth Circuit. As the Supreme Court explained in *Descamps*, "to decide, based on information about a case's underlying facts, that the defendant's prior conviction qualifies as [a] predicate even though the elements of the crime fail to satisfy our categorical test"—as the IJ did in Flores-Bustos's case— "contravene[s] [the Court's] prior decisions and the principles underlying them." *Id.* at 258.

In its opposition to Flores-Bustos's motion to dismiss, the Government argued that appealing the IJ's removability determination would have been "fruitless."[7] The Government's arguments, however, are not persuasive.

---

[7]     I refer to the Government's briefing below because, before this court, the Government argues that we should remand for the district court to decide the ineffective assistance of counsel claim if we find that Flores-Bustos satisfied § 1326(d)(1) and (d)(2). That approach does not make sense because, as I explain in later sections, the question of whether counsel committed ineffective assistance of counsel overlaps with the question of whether § 1326(d)(1) and (d)(2) were satisfied, and the record is sufficiently developed for us to address the issue.

31

For example, the Government did not appear to contest that the Washington theft statute was missing the element of intent to deprive permanently. Rather, it argued that "Ninth Circuit precedent continued to allow adjudicators to apply the modified categorical approach to non-divisible statutes that were missing an element of the generic offense," citing only *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc). In *Aguila-Montes*, we overruled *Navarro-Lopez*'s holding that the modified categorical approach is inapplicable when the crime of conviction is missing an element of the generic crime altogether. *Aguila-Montes*, 655 F.3d at 940 (overruling *Navarro-Lopez*, 503 F.3d at 1073). But the Government's reliance on *Aguila-Montes* is misplaced for two reasons. First, we decided *Aguila-Montes* over a year after the IJ issued the removal order against Flores-Bustos, so *Navarro-Lopez* was clearly controlling at the relevant time. Second, the Supreme Court promptly overruled *Aguila-Montes* in *Descamps*, which restored *Navarro-Lopez*'s holding. *Descamps*, 570 U.S. at 267. Indeed, the Supreme Court sharply criticized *Aguila–Montes*, explaining that it "subverted [the Court's] decisions, conflict[ed] with each of the rationales supporting the categorical approach and threaten[ed] to undo all its benefits." *Id.*

The Government also argued below that the IJ and BIA were "bound by" *Matter of Silva-Trevino*, which (among other holdings) allowed adjudicators to look to the record of conviction in any case where the statute of conviction

"encompasse[d] both conduct that involves moral turpitude *and* conduct that does not." 24 I&N Dec. 687, 698 (AG 2008). But *Silva-Trevino* itself acknowledged that it was attempting to "depart[] from the [Supreme Court's] *Taylor/Shepard* framework." *Id.* at 702. Competent counsel would have argued that *Silva-Trevino* impermissibly conflicted with controlling Supreme Court and Ninth Circuit precedents.[8]

In short, given the state of existing law, there were several viable grounds for challenging the government's allegation and the IJ's determination that Flores-Bustos's theft conviction was a CIMT. And, because the purported CIMT conviction was the sole ground of removability for Flores-Bustos, competent counsel would have pursued those viable arguments and challenged the IJ's CIMT

---

[8]     *Silva-Trevino* made several sweeping changes to the BIA's use of the modified categorical approach and was a controversial decision the moment it came out. Several circuit courts promptly rejected it. *See, e.g.*, *Jean–Louis v. Att'y Gen.*, 582 F.3d 462, 470 (3d Cir. 2009) (rejecting "*Silva–Trevino*'s novel approach" in favor of "the modified categorical approach that we have historically applied"); *Guardado–Garcia v. Holder*, 615 F.3d 900, 902 (8th Cir. 2010) ("[T]o the extent *Silva–Trevino* is inconsistent, we adhere to circuit law."). And in *Olivas-Motta*, we held that *Silva-Trevino* was "wrongly decided" in more ways than one and not entitled to *Chevron* deference. *Olivas-Motta v. Holder*, 746 F.3d 907, 908 (9th Cir. 2013); *see id.* at 911 (explaining that *Silva-Trevino* "erroneous[ly] . . . allows an IJ not only to consider the crimes of which an alien has been convicted, but also to consider crimes he may have committed but of which he was not convicted"); *id.* at 913 ("The Attorney General is mistaken in his conclusion that 'moral turpitude' is not 'an element' of a CIMT.").

determination on appeal. Yet, Edmondson failed to make any of those likely meritorious legal arguments. Indeed, he failed to challenge removability in any way.

In support of his collateral challenge to the removal order, Flores-Bustos introduced unrebutted expert evidence establishing that competent counsel would have known and argued that the modified categorical approach should not be applied and that the theft conviction did not qualify as a CIMT. *See* Declaration of Stacy Taeuber ("Taeuber Decl.") (attesting that "[e]ven a minimal amount of research would have made clear that there were sound legal arguments that [Flores-Bustos's] Washington conviction . . . was not a CIMT"). Edmondson did not need sophisticated research tools to make those arguments. There were publicly available resources on the precise legal issue underlying Flores-Bustos's case—whether an adjudicator may apply the modified categorical approach when the criminal statute lacked an element of the generic crime or contained an overbroad element that did not describe separate crimes (that is, when the statute was not divisible). Then, Edmondson compounded his error by failing to challenge the IJ's removability determination on appeal to the BIA. Edmondson failed to challenge that determination even though 1) the IJ's decision included a merits analysis of the issue, and 2) the IJ decided to apply the modified categorical approach based on BIA caselaw that was incompatible with Ninth Circuit and

34

Supreme Court precedents on the categorical approach. *See also* Taeuber Decl. (attesting that "a competent attorney" would have "preserved the arguments" on removability to seek review).

In *Lin*, we found deficient representation amounting to ineffective assistance of counsel where counsel failed to "present the factual and legal basis" of Lin's asylum claim. 377 F.3d at 1025. Lin's "right to a full and fair presentation of his claim included the right to have an attorney who would present a viable legal argument on his behalf." *Id.* Yet, counsel was "unprepared to present Lin's claim," "failed to argue at all" on her client's behalf, and "offered no theory as to why" his claim was meritorious. *Id.* at 1025–26. Further, although counsel filed an appeal to the BIA, she never filed a brief and "did nothing to rectify the errors made in her presentation to the IJ," which "compounded the ineffectiveness of her assistance." *Id.* at 1026. Counsel's actions, we concluded, "left Lin worse than unrepresented," and counsel "denied him due process" as a result. *Id.* at 1027, 1025.

Similarly here, Edmondson failed to present any "viable legal argument[s]" on Flores-Bustos's behalf—arguments that would have established that Flores-Bustos was not removable because his conviction did not qualify as a CIMT. *Id.* at 1025. Edmondson was unprepared at hearings, failed to argue the sole dispositive issue of removability before the IJ, and offered no theory as to why Flores-Bustos's conviction was not a CIMT—even though counsel easily could have

determined that controlling precedents favored Flores-Bustos. Further, on appeal to the BIA, Edmondson may have failed to file any brief, and he definitely failed to contest the IJ's removability determination and "did nothing to rectify the errors made." *Id.* at 1026. The record shows that competent counsel would have argued that the IJ committed legal error in applying the modified categorical approach and that Flores-Bustos, a Legal Permanent Resident, was not removable. Counsel, therefore, failed to perform with sufficient competence, and Flores-Bustos has established the first prong of the ineffective assistance of counsel inquiry. *See Maravilla*, 381 F.3d at 858.

### b. *Substantial Prejudice*

Flores-Bustos has also shown that he suffered "substantial prejudice" as a result of counsel's defective representation. *Grigoryan*, 959 F.3d at 1240. For the reasons discussed above, it is clear that, if Edmondson had challenged the IJ's application of the modified categorical approach and determination that Flores-Bustos was removable as charged, he would have most likely prevailed. *See Lin*, 377 F.3d at 1031 (finding substantial prejudice resulting from ineffective assistance of counsel where noncitizen had "plausible claim for relief").

We found prejudice resulting from ineffective assistance of counsel under similar circumstances in *Lopez-Chavez*, 757 F.3d 1033 (abrogated on other grounds). In that case, immigration counsel had conceded his client's removability

36

based on an "aggravated felony" conviction. *Id.* at 1041. At the time, there was an inter-circuit split on whether a statute like the one underlying Lopez-Chavez's conviction qualified as an "aggravated felony" for removal purposes. *Id.* at 1039. The appropriate court of appeals, the Seventh Circuit, had not taken a side. *Id.* at 1040. "[O]nly three years" after Lopez-Chavez was removed, the Seventh Circuit made a ruling that would have been in his favor. *Id.* Because of that subsequent legal development, we found that had "Lopez-Chavez's counsel challenged the IJ's ruling regarding the classification of his conviction as an aggravated felony, that ruling almost certainly would have been reversed." *Id.* at 1041. Further, we found that Lopez-Chavez established the prejudice required to show that he received ineffective assistance of counsel "in violation of his right to due process." *Id.* at 1043.

Here, like in *Lopez-Chavez*, "only three years" after Flores-Bustos was removed, the Supreme Court issued its decision in *Descamps*, which "almost certainly" would have compelled the BIA or this court to conclude that the IJ erred both by concluding that it should apply the modified categorical approach in Flores-Bustos's case and by engaging in factfinding to find a match. *Id.* at 1040–41; *see Descamps*, 570 U.S. at 258, 270. Moreover, in *Lopez-Chavez*, the legal issue that counsel failed to pursue was the subject of a circuit split and an open question in the appropriate court of appeals. *See Lopez-Chavez*, 757 F.3d at 1039–

40. In Flores-Bustos's case, Edmondson failed to pursue legal arguments that would have been supported by existing Ninth Circuit and Supreme Court precedents. And, because Edmondson failed to raise any challenge to the IJ's removability determination, neither we nor the BIA had the opportunity to review and reverse that determination. Flores-Bustos thus established the "requisite prejudice" to show he received ineffective assistance of counsel in violation of due process. *Id.* at 1043; *see also Salazar-Gonzalez v. Lynch*, 798 F.3d 917, 922 (9th Cir. 2015) (finding prejudice where "the outcome of the proceedings may have been different" had counsel's error not "denied [noncitizen's] right to appeal altogether").

Consequently, I conclude that Flores-Bustos has established that his counsel failed to perform with sufficient competence and that he suffered substantial prejudice as a result. Therefore, he has established he received ineffective assistance of counsel in violation of his constitutional due process rights, *see Volkova*, 232 F.3d at 1045, and he has established that the entry of his removal order was "fundamentally unfair," as required by § 1326(d)(3).

## B. Flores-Bustos exhausted available administrative remedies under § 1326(d)(1).

### 1. Legal Standards for § 1326(d)(1)

Section 1326(d)(1) requires the defendant to show they "exhausted any administrative remedies that may have been available to seek relief against the [removal] order[.]" 8 U.S.C. § 1326(d)(1). Although courts cannot create an "extrastatutory exception" to § 1326(d)(1)'s exhaustion requirement, *Palomar-Santiago*, 593 U.S. at 327, the statute contains a built-in textual exception: "defendants need only have exhausted administrative remedies that were 'available' to them." *Valdivias-Soto*, 112 F.4th at 731 (quoting 8 U.S.C. § 1326(d)(1) and citing *Ross*, 578 U.S. at 635–36). An administrative remedy is "unavailable" for the purposes of § 1326(d)(1), even if it is "officially on the books," if it is not, "practically speaking," "capable of use to obtain relief." *Ross*, 578 U.S. at 643. To identify the circumstances in which a BIA appeal is "[in]capable of use" to obtain relief and thus "unavailable," "it is necessary to look to 'the real-world workings of' the immigration court system." *Valdivias-Soto*, 112 F.4th at 731 (quoting *Ross*, 578 U.S. at 643).

Here, as explained above, Flores-Bustos's counsel's performance was so deficient and prejudicial that it violated Flores-Bustos's constitutional due process right to counsel. Thus, the question is whether, considering the "real-world workings" of the immigration system, counsel's ineffective assistance is a circumstance that made a BIA appeal practically "incapable of use" by Flores-Bustos to obtain relief from the IJ's erroneous removability determination. *Id.*

39

(cleaned up). Below, I explain why I conclude that the answer is "yes." Before doing so, however, I explain why I disagree with the majority's analysis of this issue.

In concluding that Flores-Bustos's ineffective counsel did not render his BIA appeal unavailable, the majority narrowly—and in my view, incorrectly—assumes that the *only* way in which counsel could render a remedy unavailable is by misrepresenting the "procedural steps for pursuing administrative remedies." That assumption fails to fully account for the legal principles established in *Ross* and *Valdivias-Soto*.

In *Ross*, the Supreme Court identified three circumstances in which a prison grievance remedy becomes practically "unavailable" to prisoners. *See Ross*, 578 U.S. at 643–44.[9] I recognize that ineffective assistance of counsel is not one of those three circumstances. However, the circumstances that could cause a BIA appeal to be "unavailable" are not limited to those three. To start, in *Valdivias-Soto*, we noted that the *Ross* Court did not hold that those three circumstances are "exclusive." 112 F.4th at 730 n.13 (citing *Ross*, 578 U.S. at 643). And, we held that

---

[9] Briefly, those three circumstances are 1) when an administrative remedy "operates as a simple dead end," 2) when a remedy "might be so opaque that it becomes, practically speaking, incapable of use," and 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

the relevant circumstances in the immigration context include those three

circumstances "at a minimum." *Id.* at 731.

Moreover, in the immigration context, it does not make sense to consider

*only* the circumstances that the Court discussed in *Ross*—for several reasons. First,

in *Ross*, the Court was considering only the "real-world workings of prison

grievance systems," and it described the circumstances as the "three kinds" that

were "relevant" to the case presented. *Ross*, 578 U.S. at 643. That is, the Court did

not consider the real-world workings of the immigration court system, which is

significantly different from a prison grievance system.

Second, noncitizens in immigration removal proceedings have a

constitutional right to counsel, but prisoners filing prison grievances do not.

*Compare Valdivias-Soto*, 112 F.4th at 722–23 (discussing constitutional right to

counsel in removal proceedings)*, with Lewis v. Casey*, 518 U.S. 343, 351 (1996)

(holding that prisoners do not have a "freestanding right" to "legal assistance" in

prison)*, and Wolff v. McDonnell*, 418 U.S. 539, 570 (1974) (holding that prisoners

do not "have a right to either retained or appointed counsel" in prison disciplinary

proceedings).

Third, because § 1326 bases criminal liability on the outcome of an

immigration proceeding, a failure to exhaust administrative remedies in the

immigration context has materially different ramifications than a failure to exhaust

in the prison grievance context. Specifically, a prisoner's failure to exhaust a prison grievance procedure precludes them from pursuing a civil claim under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e. But a noncitizen's failure to exhaust an immigration appeal means they could be criminally liable under § 1326 based on an IJ's determination that never received any meaningful administrative or judicial review. Basing criminal liability on the result of an administrative proceeding has significant constitutional implications—even when that proceeding was subject to meaningful judicial review. *See Mendoza-Lopez*, 481 U.S. at 837–38 ("[W]here a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding."); *id.* at 838 n.15 ("Even with this safeguard [of meaningful review], the use of the result of an administrative proceeding to establish an element of a criminal offense is troubling."). If we fail to recognize that a due process violation caused an administrative remedy to be practically unavailable to the noncitizen to obtain relief from an erroneous removability determination, then our error causes a second due process violation: the imposition of a criminal sanction based on an unconstitutional and unreliable administrative proceeding.

These constitutional implications in the illegal reentry context are not present in the PLRA context. *Palomar-Santiago* requires all § 1326(d)

42

requirements to be met, but it does not require us to ignore constitutional concerns when considering the scope of the textual "availability exception" to § 1326(d)(1). As noted above, the Court in *Palomar-Santiago* did not consider what would make an administrative remedy unavailable in the immigration context, and it did not consider any "freestanding" due process claims based on the application of § 1326(d)(1). 593 U.S. at 328, n.4. Because basing a criminal conviction on an administrative proceeding that "rendered direct review of the Immigration Judge's determination unavailable" violates due process, *Mendoza-Lopez*, 481 U.S. at 841, to the extent the scope of the availability exception in the § 1326(d)(1) context is ambiguous, the constitutional avoidance doctrine requires us to construe that exception broadly. *See Clark v. Martinez*, 543 U.S. 371, 381 (2005) (noting that when faced with "competing plausible interpretations of statutory text," constitutional avoidance doctrine rests on "presumption that Congress did not intend the alternative which raises serious constitutional doubts").[10] In short, the

---

[10]    Although we generally describe § 1326(d) as a congressional response to "ensure that a collateral challenge will be authorized in any case in which *Mendoza-Lopez*'s due process holding would require it," *Portillo-Gonzalez*, 80 F.4th at 916, the exhaustion requirement in § 1326(d)(1) is not actually required by *Mendoza-Lopez*, nor does it "help" to ensure the collateral review required by *Mendoza-Lopez* occurs. Rather, § 1326(d)(1) is a congressionally imposed *obstacle* to the collateral review required by *Mendoza-Lopez*, and (d)(1)'s *availability exception* helps to ensure the collateral review required by due process occurs.

fact that *Ross* does not mention ineffective assistance of counsel should not end our inquiry.

## 2. **Application**

Applying these principles here, I conclude that Flores-Bustos exhausted all administrative remedies that were available to him.

### a. *Ineffective assistance of counsel rendered BIA review of the IJ's removability determination unavailable to Flores-Bustos.*

To begin, it is important to note that Flores-Bustos filed an appeal to the BIA and retained counsel to do so. These facts materially distinguish this case from *Palomar-Santiago*, *Portillo-Gonzalez*, and many other § 1326 cases in which the noncitizen did not file a BIA appeal at all. *See, e.g.*, *Ochoa*, 861 F.3d at 1014; *Pallares-Galan*, 359 F.3d at 1093. The only reason that there is a dispute about whether Flores-Bustos satisfied § 1326(d)(1) is because, in the appeal before the BIA, Flores-Bustos's counsel failed to challenge the IJ's conclusion that his conviction was a CIMT, the sole basis for the removability determination. And, in the context of a petition for review (for which 8 U.S.C. §1252(d) also requires exhaustion of administrative remedies), we have held that "[a] petitioner cannot satisfy the exhaustion requirement by making a general challenge to the IJ's decision, but, rather, must specify which issues form the basis of the appeal." *Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004), *abrogated on other grounds by*

44

*Santos-Zacaria v. Garland*, 598 U.S. 411 (2023); *see also Umana-Escobar v.*

*Garland*, 69 F.4th 544, 550 (9th Cir. 2023) (post-*Santos-Zacarica*, although

§ 1252(d) is no longer jurisdictional, exhaustion still requires every "non-

constitutional legal claim" to "have first been raised in the administrative

proceedings below").[11]

Because Flores-Bustos retained counsel to represent him on appeal, he was

entitled to rely on counsel to "present a viable legal argument on his behalf." *Lin*,

377 F.3d at 1025. And, as discussed above, counsel could have presented

arguments that the IJ erred in concluding that Flores-Bustos was convicted of a

CIMT that were not just viable, but likely meritorious. These circumstances

compel the finding that, but for counsel's unconstitutionally ineffective assistance,

Flores-Bustos would have challenged the IJ's removability determination and

likely prevailed. *See Volkova*, 232 F.3d at 1045 (finding that, "but for" counsel's

ineffective assistance, "Volkova would have timely appealed" removal order).

Moreover, Flores-Bustos's counsel's failure to challenge the IJ's

removability determination, "in practice," deprived him of the ability to use the

---

[11]     Although strictly applying issue-exhaustion standards makes sense in the
context of a petition for review brought under 8 U.S.C. § 1252, in my view, the
criminal context of § 1326 and constitutional considerations discussed in *Mendoza-
Lopez* may require us to apply a different standard when determining whether a
noncitizen "exhausted" administrative remedies for the purpose of § 1326(d)(1).
But, for the purposes of this analysis, I assume that issue-exhaustion is also
required by § 1326(d)(1).

BIA appeal to obtain relief from the IJ's substantive error. *See Ross*, 578 U.S. at 643. To my knowledge, we have not previously decided whether ineffective assistance of counsel can render an administrative remedy unavailable. And, as explained above, although the PLRA's administrative exhaustion requirement is textually similar to § 1326(d)(1), there is no analogous PLRA case involving ineffective assistance of counsel because prisoners have no constitutional right to counsel in the prison grievance process. Still, our decisions in cases addressing ineffective assistance of counsel in removal proceedings provide useful guidance.

In *Volkova*, after an unsuccessful BIA appeal, Volkova hired an attorney to file a petition for review with our court. 232 F.3d at 1044. The petition was dismissed, however, because counsel had filed it one day late. *Id.* Based on the fact that Volkova had hired counsel to file a petition for review on her behalf, we found that, "but for her counsel's error," Volkova "would have timely appealed." *Id.* at 1045. Further, we held that counsel's error amounted to ineffective assistance that violated Volkova's right to counsel under the Fifth Amendment's Due Process Clause. *Id.* In assessing the impact of counsel's error, we held, "where an alien is prevented from filing an appeal in an immigration proceeding due to counsel's error, the error deprives the alien of the appellate proceeding entirely." *Id.* And this error mandated a presumption of prejudice because "the adversary process itself

46

has been rendered presumptively unreliable." *Id.* (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 471 (2000)).

Applying the principles established in *Volkova*, we have held that counsel errors that had the same practical effect on a BIA appeal "deprived" the noncitizen of the administrative remedy. For example, in *Rojas-Garcia*, we held that "counsel's failure to file a brief with the BIA, which resulted in summary dismissal, . . . deprived him of a direct appeal to the BIA." *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 826 (9th Cir. 2003); *see also Ray v. Gonzales*, 439 F.3d 582, 590 (9th Cir. 2006) ("If [counsel] did in fact fail to file a brief on Ray's behalf, then the BIA's cursory review of the merits of Ray's appeal is insufficient because it deprived Ray of the adversarial proceeding to which he was entitled.").

Here, as in *Volkova*, Flores-Bustos has shown that he would have appealed the IJ's removability determination "but for" counsel's error. *Volkova*, 232 F.3d at 1044. And, Flores-Bustos's counsel's failure to challenge the IJ's removability determination had the same effect as a failure to timely file a notice of appeal or failure to file a brief with the BIA: counsel's error caused the BIA not to review the removability determination at all.[12] Because counsel's error "deprived [Flores-

---

[12]     In its decision, the BIA noted, "On appeal, the respondent does not contest the Immigration Judge's finding that the respondent is removable as charged." The BIA then proceeded to review only the IJ's denial of Flores-Bustos's applications for cancellation of removal and voluntary departure. *See* 8 C.F.R. § 1003.3(b)

Bustos] of a direct appeal to the BIA," *Rojas-Garcia*, 339 F.3d at 826, the BIA

appeal, "although officially on the books, [wa]s not capable of use to obtain relief,"

*Ross*, 578 U.S. at 643. Therefore, considering the real-world workings of

immigration proceedings, Flores-Bustos exhausted all administrative remedies that

were, "practically speaking," available to him, and he satisfies § 1326(d)(1)'s

administrative exhaustion requirement. *Id.*

> ### b. *Flores-Bustos was not required to file a motion to reopen to satisfy § 1326(d)(1).*

The district court held that Flores-Bustos did not satisfy § 1326(d)(1) in part

because he did not file a motion with the BIA to reopen his removal proceeding

based on an ineffective assistance of counsel claim. *See generally* 8 C.F.R.

§ 1003.2. In the Government's answering brief, it noted this aspect of the district

court's decision but did not argue we should affirm on that ground. As such, the

Government forfeited that argument. *See Chinaryan v. City of Los Angeles*, 113

F.4th 888, 903 (9th Cir. 2024) (considering argument "forfeited" where appellees

"failed to address [the argument] in their answering brief" (cleaned up)).[13]

---

(requiring a party appealing to the BIA to "specifically identify the findings of fact, the conclusions of law, or both, that are being challenged").

[13]    The district court relied on *United States v. Castillo-Martinez*, 16 F.4th 906 (1st Cir. 2021), where the First Circuit held that a defendant did not satisfy § 1326(d)(1) when he failed to file a motion to reopen on an ineffective assistance

In any event, that argument fails on the merits. We have long held that a defendant satisfies § 1326(d)(1) by showing that they filed a direct appeal to the BIA; we have never required a defendant to show that they *also* filed a motion asking the BIA to reopen or reconsider their case. *See Gonzalez-Villalobos*, 724 F.3d at 1126 (holding that defendant "has shown that he exhausted his administrative remedies" and satisfied (d)(1) by "appealing the Immigration Judge []'s adverse ruling to the Board of Immigration Appeals"). Nothing in *Palomar-Santiago* disturbs that holding. Indeed, *Palomar-Santiago* at least suggests that a defendant exhausts administrative remedies, and thereby satisfies § 1326(d)(1), by filing the direct BIA appeal. *See* 593 U.S. at 327 ("[T]he substantive validity of the removal order is quite distinct from whether the noncitizen exhausted his administrative remedies *(by appealing the immigration judge's decision to the BIA)*[.]" (emphasis added)).

The same issue was presented in *Valdivias-Soto*. Like Flores-Bustos, Valdivias could have, but did not, file a motion to reopen with the BIA to collaterally challenge the removal order based on the same procedural error

---

of counsel claim. The Government argued that we should follow *Castillo-Martinez* only in a 28(j) letter (filed one day before oral argument) and at oral argument— even though *Castillo-Martinez* was decided in 2021 and expressly relied on by the district court. Under these circumstances, I am inclined to deem that argument forfeited, but even if the Government had properly raised it, I would reject it for the reasons stated below.

(translation errors) that we concluded caused his removal proceeding to be fundamentally unfair and caused the direct BIA appeal to be unavailable. *See Perez-Lastor v. INS*, 208 F.3d 773, 777–78, 783 (9th Cir. 2000) (recognizing BIA's discretion to correct due process errors resulting from "incompetent translation"); *Meza-Vallejos v. Holder*, 669 F.3d 920, 924 (9th Cir. 2012) (recognizing motions to reopen as administrative mechanism for noncitizens to "provide new information relevant to their cases to the immigration authorities" (quotation marks and citation omitted)). Although the government argued in its briefing that Valdivias failed to satisfy § 1326(d)(1) because he did not file a motion to reopen, we held that he had satisfied the administrative exhaustion requirement by showing that the translation error made the direct BIA appeal unavailable. *See Valdivias-Soto*, 112 F.4th at 732.

Even if the Government's argument were not already foreclosed by *Gonzalez-Villalobos* and *Valdivias-Soto*, I would conclude anew that § 1326(d)(1) requires exhausting only a direct BIA appeal. Beginning with the statutory text, § 1326(d)(1) does not expressly state that "administrative remedies" includes motions to reopen or reconsider. As a result, § 1326(d)(1) is ambiguous on this point. Several well-established principles of statutory interpretation—the presumption of judicial review, the doctrine of constitutional avoidance, and the rule of lenity—all require us to resolve that ambiguity in favor of permitting

50

judicial review of an "administrative order . . . used to establish conclusively an element of a criminal offense." *Mendoza-Lopez*, 481 U.S. at 838; *see Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986) ("We begin with the strong presumption that Congress intends judicial review of administrative action."); *United States v. Davis*, 588 U.S. 445, 464–65 (2019) ("Applying constitutional avoidance to narrow a criminal statute, as this Court has historically done, accords with the rule of lenity.").

In sum, Flores-Bustos satisfied § 1326(d)(1)'s administrative exhaustion requirement. He retained counsel to file an appeal to the BIA. His counsel, however, either failed to file a BIA brief or failed to challenge the IJ's removability determination in the BIA brief—even though there were several viable bases for challenging that determination. Counsel's error, "in practice," deprived Flores-Bustos of his ability to use the BIA appeal to obtain relief from the erroneous removability determination. *Ross*, 578 U.S. at 643. Thus, under the standard set by *Ross* and *Valdivias-Soto*, which requires us to consider the "real-world workings" of the immigration system, counsel's error caused the BIA appeal to become unavailable to Flores-Bustos. *Id.*; *Valdivias-Soto*, 112 F.4th at 731.

**C. Flores-Bustos was improperly deprived of the opportunity for judicial review under § 1326(d)(2).**

Section 1326(d)(2) requires the defendant to demonstrate that "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review." 8 U.S.C. § 1326(d)(2). "[N]oncitizens are typically barred from obtaining judicial review of a removal order without first appealing to the BIA." *Valdivias-Soto*, 112 F.4th at 733 (citing 8 U.S.C. § 1252(d)(1)). Consequently, when noncitizens are unable to appeal their removal order because of a procedural due process violation, they "have been improperly deprived of judicial review." *Id.*; *see also Mendoza–Lopez*, 481 U.S. at 840 ("Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding.").

As discussed above, the record here establishes that Flores-Bustos would have appealed the IJ's removability determination but for his counsel's ineffective assistance. By failing to challenge the IJ's removability determination to the BIA, counsel insulated the IJ's removability determination from review by the BIA and this court. *See Volkova*, 232 F.3d at 1045; *see also Lin*, 377 F.3d at 1031 (counsel's failure to present "more than a bald, unsupported assertion to the BIA" "foreclosed [noncitizen's] opportunity to raise [the] issue to the BIA or to us"). Indeed, under the Ninth Circuit precedents that controlled at the time the BIA affirmed Flores-Bustos's removal order, we would have treated counsel's failure to appeal the IJ's removability determination to the BIA as barring us from considering the issue for

52

lack of subject matter jurisdiction. *See, e.g.*, *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004), *abrogated by Santos-Zacaria*, 598 U.S. 411. Accordingly, Flores-Bustos, like Valdivias, was improperly deprived of judicial review of his removal order and satisfies § 1326(d)(2).

## III.    Conclusion

Because Flores-Bustos satisfies all three prongs of § 1326(d), the challenged removal order "may not be used to 'establish conclusively an element of a criminal offense.'" *Valdivias-Soto*, 112 F.4th at 733 (quoting *Mendoza-Lopez*, 481 U.S. at 838). Flores-Bustos's indictment under § 1326 should be dismissed.